UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HANOVER AREA SCHOOL DISTRICT, : | |
| Plaintiff : | CIVIL ACTION NO. 3:24-cv-564 |
| : | |
| v. : | (JUDGE MANNION) |
| : | |
| CM REGENT INSURANCE COMPANY, : | |
| : | |
| Defendant : | |

## MEMORANDUM

The court considers Plaintiff Hanover Area School District's motion for preliminary injunction. (Doc. 9). Plaintiff seeks to enjoin Defendant CM Regent Insurance Company from denying defense coverage in another civil action brought against Plaintiff, April Biddinger v. Hanover Area School District, No. 3:22-CV-1509. (Doc. 9-2).

I.     BACKGROUND

   a. Agreements

Plaintiff and Defendant were parties to two insurance policies, the School Leaders Liability Policy, (Doc. 6-1), and the General Liability ("GL") Policy, (Doc. 6-2; Doc. 6-3).[1]

The School Leaders Policy requires Defendant "to defend any 'suit' against the insured seeking damages for 'loss' even if any of the allegations are groundless, false, or fraudulent." (Doc. 10-1 at 5 §I.B.). But this duty is subject to exceptions—Defendant is not required to defend any suit "arising out of, caused by, resulting from, in consequence of, in connection with or in any way involving any of" several categories. (Id. at 6 §II). One of these is "Wrongful Acts," including "assault" and "battery." (Id. at 7 §II.E.).

The GL Policy requires Defendant to defend Plaintiff "against any 'suit' seeking" damages for bodily injury, property damage, or "personal and advertising injury." (Doc. 6-3 at 5 §I.A.1.a, 10 §1.B.1.a). "'Bodily injury' means

---

[1] The parties aver that the School Leaders Policy was effective July 1, 2022 through July 1, 2023. (Doc. 11 at 7; Doc. 14 at 18). According to Defendant, the GL Policy, which comprised two consecutive agreements, was effective July 1, 2020 through July 1, 2022. (Doc. 14 at 18). The document attached by each party as the "2022 GL Policy" appears to indicate a "Policy Period" of 07/01/2022–07/01/2024. (Doc. 6-3 at 2; Doc. 10-2 at 2). In any event, there is no contention by Defendant that either Policy is rendered inapplicable here by its coverage period.

bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Id. at 17 §V.3). "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use or another's advertising idea in your 'advertisement', or
> g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'.

(Id. at 19 §V.14).

### b. Biddinger Litigation

April Biddinger, the parent of a student at Hanover Area Junior/Senior High School, filed an action against Plaintiff in the Luzerne County Court of Common Pleas. (Case No. 3:22-cv-1509, Doc. 1-1). On behalf of her son, Biddinger brought claims of (I) Due Process violation through 42 U.S.C. §1983 – injury to bodily integrity; (II) Due Process violation through §1983 – injury as a result of state created danger/special relationship; (III) Equal

Protection violation through §1983; and (IV) Intentional infliction of emotional distress. (Id.). The action was removed to the United States District Court for the Middle District of Pennsylvania. (Case No. 3:22-cv-1509, Doc. 1). The district court granted Plaintiff's motion to dismiss in part, dismissing all claims except Count II's "state-created danger" due process claim. (Case No. 3:22-cv-1509, Doc. 1). 2023 WL 6050577 (M.D. Pa. Sept. 15, 2023).

Upon the institution of the Biddinger suit, Defendant advised Plaintiff that it would be providing a defense under the GL policy and that "the defense will continue to be under a reservation of rights." (Doc. 10-6). It specified that those reservations included "the right to withdraw the defense provided in this matter." (Id. at 5). In another letter, it also advised Plaintiff that it would be providing a defense under the School Leaders Policy, again reserving its right to change its position. (Doc. 10-7). That letter further advised Plaintiff that William McPartland, Esq., of the law firm Marshall Dennehy, had been assigned the defense of the suit. (Id. at 5).

After the district court's partial dismissal, Defendant sent another letter advising Plaintiff that it would no longer be providing a defense in the Biddinger suit under the School Leaders Policy due to the Policy's exclusions. (Doc. 10-8). And in an email sent about a month later, Defendant advised Plaintiff that "there is no longer coverage under either" the GL or

School Leaders policies. (Doc. 5-3 at 347). Attorney Mark Bufalino entered the Biddinger action on behalf of Plaintiff, (Case No. 3:22-cv-1509, Doc. 31), and Marshall Dennehy withdrew. (Case No. 3:22-cv-1509, Doc. 32).

### c. Procedural Background

Plaintiff brought an action for declaratory relief against Defendant in the Luzerne County Court of Common Pleas, claiming breach of contract and violations of Pennsylvania consumer protection law, and seeking a declaration that Defendant is estopped from denying coverage and a defense in the Biddinger action and another action (which is unrelated to this motion). (Doc. 1-2). Defendant removed the case to this court. (Doc. 1).[2]

The instant motion for a preliminary injunction seeks to compel Defendant to provide a defense in connection with the Biddinger action. (Doc. 9-2).

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

---

[2] Because Plaintiff is a citizen of Pennsylvania and Defendant is a Wisconsin corporation with its principal place of business in Wisconsin, and it does not appear to a legal certainty that the amount in controversy is less than $75,000, (Doc. 1 ¶¶4–11), the court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §1332.

- 5 -

the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Council, Inc.*, 555 U.S. 7, 20 (2008). These factors inform a balancing test, but the first two factors—likelihood of success and irreparable harm—are essential. *Relly v. City of Harrisburg*, 858 F.3d 173, 176–79 (3d Cir. 2017). So "[i]f these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

## III. DISCUSSION

### A. Likelihood of success

**i. Is Plaintiff reasonably likely to succeed on the ground that the School Leaders Liability Policy requires Defendant to provide a defense in the Biddinger action?**

Plaintiff asserts that the Biddinger action "triggers a defense under the School Leaders Liability Policy" because the Policy "covers 'wrongful acts', including actions filed pursuant to 42 U.S.C. §1983." (Doc. 11 at 20). Because the state-created danger claim remaining in the Biddinger action does not involve allegations of intentional or affirmative conduct, Plaintiff argues, none of the Policy's exclusions apply. (Id. at 21–23).

Defendant counters that the remaining claim in the Biddinger action is excluded from the School Leaders Policy's coverage because "the deprivation of rights alleged is the result of an assault." (Doc. 14 at 29). Plaintiff in reply observes that, while Biddinger alleges that her son was physically assaulted by another student at lunch, (See Case No. 3:22-cv-1509, Doc. 1-1 ¶26), her claim against Plaintiff is that its inaction made her son more vulnerable to attack. (Doc. 21 at 6–11). So, according to Plaintiff, "it cannot be said that" the alleged Due Process violation in the Biddinger action "arose out of" an assault. (Id. at 7).

Traditional principles of contract interpretation apply to the insurance policies, and require courts "to effectuate the intent of the contracting parties as reflected by the written language of the insurance policies." *Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020).[3] "In this regard, the language of the policy must be considered in its entirety." *Id.*

Where "policy terms are clear and unambiguous," they are given "their plain and ordinary meaning, unless they violate a clearly established public policy." *Id.* Ambiguous provisions are construed against the insurer. *Id.*

---

[3] The Policies at issue were entered between Pennsylvania entities (Defendant was formerly a Pennsylvania corporation, (Doc. 1 at 1 n.1)), and contain no provision designating another state's law as governing. The court, as the parties have, therefore interprets them according to Pennsylvania law.

"Policy terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*

Regarding an insurer's duty to defend, the Pennsylvania Supreme Court has instructed that:

> A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage …. [T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.

*Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 (Pa. 1999).

The School Leaders Policy excludes from coverage suits "arising out of, caused by, resulting from, in consequence of, in connection with or in any way involving any of the following: …. assault." (Doc. 10-1 at 6–7 §II.E).

Biddinger alleges that another student, M.C., made threats of physical attack to her son, C.S. (Case No. 3:22-cv-1509, Doc. 1-1 ¶15). The son allegedly reported M.C.'s threats to his principal and guidance counselor, and a meeting was held, during which M.C. said he would not attack C.S. (Id. ¶16, 20–21). "No further attempts to investigate or remediate the potential conflict were made," and M.C. attacked C.S. in the cafeteria the

following school day. (Id. ¶22, 26). The employees who were monitoring the cafeteria (a co-principal and a basketball coach) allegedly had neither received security training nor been informed of M.C.'s threats against C.S.. (Id. ¶¶27–29).

Biddinger further alleges that Plaintiff failed to take corrective measures despite notice of a hostile educational environment, failed to provide adequate training and supervision of its employees regarding student-on-student violence, failed to develop and implement adequate safety procedures regarding student violence, and was deliberately indifferent to student violence. (Id. ¶¶44–47).

In Count II, Biddinger alleges that Plaintiff "utilized its position of authority and power to create a danger to C.S. and placed C.S. … in a more vulnerable position to a well-known risk of harm." (Id. ¶100). She also alleges that Plaintiff "was deliberately indifferent to C.S. in that they knew C.S. … faced substantial risk of serious harm, or even death, because of student-on-student violence such as the incident at issue, and yet … failed to take reasonable steps to avoid the harm." (Id. ¶101).

In applying the School Leaders Policy's "Wrongful Acts" exclusion to the facts alleged in the Biddinger complaint, the court sees no ambiguity. The suit arose from an assault. The alleged assault is the very "danger" that the

Plaintiff allegedly created by its inaction. Though a *claim* for assault is not brought, the exclusion does not require a "claim" for assault; it simply requires that the suit arose out of, was caused by, resulted from, was in consequence of or in connection with, or involved an assault. That much can be said here.

Undoubtedly, this is an expansive exclusion. But the clear and unambiguous language of the Policy excludes a complaint of this nature from Defendant's duty to defend. So the court concludes that Plaintiff is not reasonably likely to succeed on this ground.

> **b. Is Plaintiff reasonably likely to succeed on the ground that the GL Policy requires Defendant to provide a defense in the Biddinger action?**

Defendant asserts that the GL Policy also does not require it to defend the Biddinger action, because that suit does not claim injury arising from one of the enumerated torts which form the Policy's definition of "personal and advertising injury." (Doc. 14 at 29–31). Plaintiff responds by noting that the Policy also imposes on Defendant the duty to defend Plaintiff against any suit seeking damages for "bodily injury" to which the Policy applies. (Doc. 21 at 14–15; Doc. 6-3 at 5 §I.A.1.a).

The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any

time." (Doc. 6-3 at 17 §V.3). Defendant does not contend that any of the exclusions from "bodily injury" coverage apply. (Its brief does not address the applicability of "bodily injury" coverage, (Doc. 14 at 29–30)).

As discussed *supra* Section III.A.i, the Biddinger complaint arises from a physical assault. It seeks redress, including damages, for a physical injury which Biddinger claims the School District caused by its deliberate indifference. So this suit is one seeking damages for bodily injury, and therefore one against which the Policy requires Defendant to defend Plaintiff.

The court thus concludes that Plaintiff has established a reasonable likelihood of success on its breach of contract claim. So the court need not address Plaintiff's contention that Defendant should be estopped from withdrawing coverage. (See Doc. 11 at 15–18).

### B. Irreparable injury

Irreparable harm in the preliminary injunction context is that "which cannot be redressed by a legal or equitable remedy following trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). That is, "[t]he preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.*

According to Plaintiff, it will suffer irreparable injury absent an injunction because "the 'revolving door' of defense counsel severely jeopardizes [its]

ability to defend the Biddinger action." (Doc. 11 at 26). It baldly asserts that the "delays and impact on judicial economy" potentially occasioned by this change in representation "are not adequately compensable by monetary relief." (Id. at 26–27). Plaintiff further argues that "the effect of denying the injunction will compel the District to continue to divert funds and resources intended for the public education of its students to defending the Biddinger action." (Id. at 27).

Plaintiff has raised the prospect only of monetary harm. Its position that the "revolving door" of defense counsel jeopardizes its defense of the Biddinger Action ultimately represents a fear that it will be found liable and be required to pay damages in that action.[4] Likewise, its complaint of "delays and impact on judicial economy" describes increased costs. And its reference to diverted funds and resources plainly sounds in financial harm.

But "[e]conomic loss does not constitute irreparable harm." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). "[I]n order to warrant a preliminary injunction, the injury created by a failure to issue the requested injunction must be of a peculiar nature, so that compensation in money cannot atone for it." *Id.* (internal quotations omitted).

---

[4] Biddinger seeks monetary relief. (See Case No. 3:22-cv-1509, Doc. 1-1 at 26).

If Plaintiff ultimately succeeds on its breach of contract claim(s), it will be entitled to compensatory relief, by which Defendant will compensate it for damages sustained because of that breach. *See Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010) ("The purpose of a damage award is to place the non-breaching party as nearly as possible in the same position it would have occupied had there been no breach. The measure of damage for breach of contract is *compensation* for the loss sustained" (internal citations and quotations omitted)); *Bert Co. v. Turk*, 298 A.3d 44, 61 (Pa. 2023) ("In Pennsylvania, the purpose of compensatory damages is … to make the plaintiff whole."). So the harm Plaintiff alleges here in the absence of a stay can be redressed by a legal remedy. It has therefore not established irreparable harm.

Based on this conclusion, the court need not address the remaining two factors, as Plaintiff has not satisfied the "gateway" factor of irreparable harm. *Reilly*, 858 F.3d at 179.

## IV.     CONCLUSION

Because Plaintiff has not established irreparable injury in the absence of preliminary relief, it is not entitled to a preliminary injunction. Its motion will therefore be denied. An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 31, 2024**
24-564-01