## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **HANOVER AREA SCHOOL DISTRICT,** | : |
| **Plaintiff** | :   **CIVIL ACTION NO. 3:24-CV-564** |
| **v.** | :   **(JUDGE MANNION)** |
| **CM REGENT INSURANCE COMPANY,** | : |
| **Defendant** | : |
|  | : |

*FILED*
*SCRANTON*
AUG 08 2024
PER_____
DEPUTY CLERK

### MEMORANDUM

Plaintiff Hanover Area School District brings this action against Defendant CM Regent Insurance Company, seeking to require Defendant to provide insurance coverage and defense in two actions brought against the School District and to recover compensatory damages related to Defendant's denial (or anticipated denial) of defense coverage in those actions. (Doc. 6). Defendant has moved to dismiss Plaintiff's amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to strike certain allegations under Rule 12(f), and to require a more definite statement of a pleading under Rule 12(e). (Doc. 12; Doc. 15 at 9–10).

## I.   BACKGROUND[1]

### a. Agreements

Plaintiff and Defendant were parties to two insurance policies, the School Leaders Liability Policy, (Doc. 6-1), and the General Liability ("GL") Policy, (Doc. 6-2; Doc. 6-3).[2]

The School Leaders Policy requires Defendant "to defend any 'suit' against the insured seeking damages for 'loss' even if any of the allegations are groundless, false, or fraudulent." (Doc. 10-1 at 5 §I.B.). Excluded from this duty are suits "arising out of, caused by, resulting from, in consequence of, in connection with or in any way involving," among other things, "assault," "battery," "bodily injury," "mental injury," "mental anguish," or "emotional distress." (Id. at 6–7 §§II.D, II.E).

The GL Policy requires Defendant to defend Plaintiff "against any 'suit' seeking" damages for bodily injury, property damage, or "personal and advertising injury." (Doc. 6-3 at 5 §I.A.1.a, 10 §1.B.1.a).

---

[1] Entries in this proceeding, (Case No. 3:24-cv-564), are designated "(Doc.)." Entries in the "Biddinger Action," (Case No. 3:22-cv-1509), are designated "(Biddinger Doc.)." Entries in the "Mangan Action," (Case No. 3:22-cv-1578), are designated "(Mangan Doc.)."

[2] The GL Policy comprised two consecutive agreements. (Doc. 6-2; Doc. 6-3).

### b. Biddinger Action

April Biddinger, the parent of a student at Hanover Area Junior/Senior High School, sued Plaintiff in the Luzerne County Court of Common Pleas, bringing claims on behalf of her son. (Biddinger Doc. 1-1). The action was removed to federal court, and the district court granted Plaintiff's motion to dismiss in part, dismissing all claims except Plaintiff's "state-created danger" due process claim. (Biddinger Docs. 1, 19). 2023 WL 6050577 (M.D. Pa. Sept. 15, 2023).

Defendant initially advised Plaintiff that it would be providing a defense under the GL policy and that the defense would "continue to be under a reservation of rights," including "the right to withdraw the defense provided in this matter." (Doc. 10-6 at 5). In another letter, it also advised Plaintiff that it would be providing a defense under the School Leaders Policy, again reserving its right to change its position. (Doc. 10-7).

After the district court's partial dismissal, Defendant sent another letter advising Plaintiff that it would no longer be providing a defense in the Biddinger suit under the School Leaders Policy due to the Policy's exclusions. (Doc. 10-8). And in an email sent about a month later, Defendant advised Plaintiff that "there is no longer coverage under either" the GL or School Leaders policies. (Doc. 5-3 at 347).

- 3 -

### c. Mangan Action

On behalf of his daughter (a student at Hanover Area High School), Joseph Mangan sued Plaintiff in federal court, bringing claims under 42 U.S.C. §1983. (Mangan Doc. 1).

Upon institution of the Mangan action, Defendant notified Plaintiff that it would not be providing coverage under the GL Policy. (Doc. 6-11; Doc. 6-14), but that it would be providing a defense under the School Leaders Policy, though it would not indemnify certain damages if awarded, and reserved its right to change its position. (Doc. 6-12). Plaintiff moved to dismiss that action, (Mangan Doc. 8), and the district court denied its motion. (Mangan Doc. 31).

### d. Procedural Background

Plaintiff brought an action against Defendant in the Luzerne County Court of Common Pleas, claiming breach of contract and violations of Pennsylvania insurance and consumer protection law, and seeking a declaration that Defendant is estopped from denying coverage and a defense in the Biddinger and Mangan actions. (Doc. 1-2). Defendant

removed the case to this court and filed a motion to dismiss, (Doc. 1; Doc. 4),[3] and Plaintiff filed an amended complaint. (Doc. 6).

Plaintiff claims breach of contract for: (Count I) Defendant's denial of defense coverage in the Biddinger action under the School Leaders Policy; (Count II); Defendant's denial of coverage in the Biddinger action under the GL Policy; (Count III) Defendant's denial of coverage in the Mangan action under the School Leaders Policy[4]; and (Count IV) Defendant's denial of coverage in the Mangan action under the GL Policy. (Doc. 6). It further claims that Defendant has (Count V) violated the Pennsylvania's Unfair Insurance Practices Act; and (Count VI) acted in bad faith in violation of Pennsylvania law, 42 Pa. Cons. Stat. §8371. (Id.). In addition to damages, Plaintiff seeks a declaratory judgment "to affirm that the School Leaders Policy, the 2021 GL Policy and the 2022 GL Policy provide coverage to the District for defense and indemnity against the claims asserted in the 'Biddinger Action' and the

---

[3] Because Plaintiff is a citizen of Pennsylvania and Defendant is a Wisconsin corporation with its principal place of business in Wisconsin, and it does not appear to a legal certainty that the amount in controversy is less than $75,000, (Doc. 1 ¶¶4–11), the court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §1332.

[4] Though at certain points the Amended Complaint refers to Defendants' "denial of defense … in the 'Mangan Action' under the School Leaders Policy," (Doc. 6 ¶¶142, 145), Plaintiff acknowledges that Defendant *is* providing it a defense in the Mangan action under the School Leaders Policy, (Doc. 22 at 11 ("Regent is continuing to provide defense coverage to the district in the "Mangan Action" under the School Leaders Policy.")).

'Mangan Action' and for any losses incurred or awarded as part of those civil actions." (Id. ¶169).

Plaintiff moved for a preliminary injunction compelling Defendant to provide a defense in connection with the Biddinger action, (Doc. 9; Doc. 9-2), and the court denied Plaintiff's motion. (Doc. 28). 2024 WL 3605958. The court now considers Defendant's motion to dismiss. (Doc. 12).

## II.   LEGAL STANDARDS

### a.  Rule 12(b)(1)

A responsive pleading may assert as a defense "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A complaint's subject-matter jurisdiction can be attacked facially or factually by Rule 12(b)(1) motion. *See Schuchardt v. President*, 839 F.3d 336, 343 (3d Cir. 2016). For a facial attack, the court reviews only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). "If, however, the defendant contests the pleaded jurisdictional facts, 'the court must permit the plaintiff to respond with evidence supporting jurisdiction.'" *Id.*

### b. Rule 12(b)(6)

A defendant may also move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must make more than "conclusory or 'bare-bones' allegations," and "'threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering the complaint, the court applies a "two-part analysis." *Id.* "First," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. "Second," the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim to relief." *Id.* at 211.

### c. Rule 12(f)

A party may move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid

unnecessary forays into immaterial matters." *Zaloga v. Provident Life and Accident Ins. Co.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009).

> Immaterial matter is that which has no essential or important relationship to the claim for relief. Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action. Scandalous pleading must reflect cruelly upon the defendant's moral character, use repulsive language, or detract from the dignity of the court.

> *Id.*

## III.   DISCUSSION

### a. Jurisdiction

Defendant first asserts that Counts III and IV, which relate to the Mangan action, and Count VI as it relates to the Mangan action, should be dismissed because Defendant is currently providing Plaintiff a defense in that action. (Doc. 15 at 13–15). This continued defense, Defendant contends, makes these claims unripe.[5] (Doc. 15 at 15 ("[T]o the extent that the *Mangan*

---

[5] Defendant variously invokes the doctrines of mootness and ripeness. (Doc. 15 at 15). Because Plaintiff's claims relating to the Mangan action center on an expected rather than a subsided harm, Defendant's justiciability argument is more appropriately addressed as concerning ripeness. *See Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 412 (3d Cir. 2021) ("At its core, the ripeness doctrine serves to determine whether a party has brought an action prematurely ....").

action has been defended, and *continued to be defended* by CM Regent, any ruling by this Court on CM Regent's duty to defend the Mangan [action] would constitute an advisory opinion.")).

There is no dispute that Defendant continues to provide Plaintiff a defense in the Mangan action, pursuant to the School Leaders Policy. (Doc. 22 at 12). Implicit in Defendant's argument is the assumption that, as long as it continues to provide a defense, it has not harmed Plaintiff in connection with the Mangan action.

The federal judicial power extends only to "Cases" and "Controversies." U.S. Const. art. III, §2. This constitutional limitation on subject-matter jurisdiction is "essential to our system of separated powers." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). Regarding the "case-or-controversy requirement," the Supreme Court has explained that:

> To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them, and confines them to resolving real and substantial controversies admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotations and citations omitted).

The threshold question whether a plaintiff "has suffered some threatened or actual injury," referred to as "standing," "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness—whether the occasion for judicial intervention persists." *Warth v. Seldin*, 422 U.S. 490, 499 & n.10 (1975).

Defendant submits that, because a defense of the Mangan action continues, Plaintiff's claims related to that action are not justiciable. But Article III may encompass "*threatened*" injury, too. *See Lewis*, 494 U.S. at 477 (emphasis added). And Plaintiff alleges threatened injury: it posits that Defendant "could improperly withdraw its defense of the District in the 'Mangan Action' under the 2022 School Leaders Policy" and that Plaintiff would thus "be left without defense counsel," as in the Biddinger action. (Doc.

22 at 15).[6] Defendant does not address whether this threatened injury satisfies the case-or-controversy requirement.[7]

Subject-matter jurisdiction "extends only to claims that are ripe for resolution." *Wayne Land and Mineral Group LLC v. Delaware River Basin Commission*, 894 F.3d 509, 522 (3d Cir. 2018). "[A] claim is ripe for review if it is fit for judicial decision and withholding court consideration of the issue would constitute a hardship to the parties." *Id.*

Plaintiff seeks declaratory relief with regard to the Mangan action. (Doc. 6 at 35, 41). The Declaratory Judgment Act allows a federal court to provide this type of relief "in a case of actual controversy within its jurisdiction." 28 U.S.C. §2201(a). Because "declaratory judgments are issued before 'accomplished' injury can be established," ripeness can be

---

[6] Plaintiff contends that it has also alleged an actual injury in Count III. (Doc. 22 at 11–12; Doc. 6 ¶144 (alleging that Defendant's claims representative "has refused or failed to communicate with [Plaintiff] and refused the District's request for full copies of the policies")). Even assuming Plaintiff's generalized allegation that "[a]s a result of Regent's breaches of the School Leaders Policy, the District has been required to expend sums of money and time to ensure compliance with the Policy," (Doc. 6 ¶146), is sufficient to establish actual injury, an assessment of jurisdiction as to the claims of breach of contract for failure to defend the Mangan action (as opposed to breach of the implied duty of good faith) would be necessary.

[7] The court's discussion proceeds beyond Defendant's specific argument, because federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

hard to define in this context. *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 646–47 (3d Cir. 1990). As the Supreme Court has observed:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pac. Coal & Oil. Co.*, 312 U.S. 270, 273 (1941). In determining whether a declaratory judgment action is ripe, a court's analysis is guided by three factors: (1) "the adversity of the parties' interests; (2) "the conclusiveness of the judgment"; and (3) "the utility of the judgment." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 135 (3d Cir. 2022). The action is ripe if all three factors are present. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).[8]

As to the first factor, the plaintiff "need not suffer a *completed* harm to establish adversity of interests," but "must demonstrate that the probability of the future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Pittsburgh*

---

[8] Defendant lists these factors but does not offer argument as to them. (Doc. 15 at 15).

*Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'r*, 580 F.3d 185, 190 (3d Cir. 2009). Next, conclusiveness "goes to whether the parties' rights will be definitively decided by" the judgment. *Step-Saver*, 912 F.3d 643, 649 n.9 (3d Cir. 1990). This factor "also addresses the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal." *NE Pub Partners v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001). Third, owing to the Declaratory Judgment Act's purpose "to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future," the utility inquiry goes to "whether the parties' plans of actions are likely to be affected by a declaratory judgment." *Step-Saver*, 912 F.3d at 649 & n.9.

### i. Adversity of interests

Again, it is undisputed that Defendant continues to provide Plaintiff a defense in the Mangan action. (Doc. 22 at 12). But Plaintiff fears that Defendant may withdraw it, leaving Plaintiff responsible for the defense. (Id. at 15).

Under Pennsylvania law, "once a third party has raised allegations against an insured which potentially fall within the coverage provided, the insurer is obligated to fully defend its insured *until it can confine the possibility*

- 13 -

*of recovery to claims outside the coverage of the policy*," and if it can do so, it could legally "terminate its defense of a claim in 'mid-course.'" *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 218 (3d Cir. 1986). Plaintiff's brief appears to suggest that the possibility that Defendant *could* withdraw coverage alone establishes adversity of interests. (Doc. 22 at 15).[9] But the *possibility* of harm is not enough; there must instead be a "real and substantial" probability, "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Pittsburgh Mack*, 580 F.3d at 190.

Defendant's handling of the Biddinger action, though, brings this theoretical harm closer to reality. There, Biddinger alleges that another student attacked her son in the school cafeteria, and that the attack resulted in part from certain actions or inactions on the District's part. (Biddinger Doc. 1-1). After all but Biddinger's "state-created danger" due process claim were dismissed, (Biddinger Doc. 19), Defendant advised Plaintiff that it would no longer be providing a defense in that action under the School Leaders Policy due to that Policy's exclusions. (Biddinger Doc. 10-8). In listing those exclusions in its letter to Plaintiff, Defendant underlined "assault" and

---

[9] Plaintiff also asserts that "[o]nce [Defendant] made the unilateral decision that the remaining state-created danger claim is outside the 2021 GL Policy, the District's and [the Defendant]'s interests immediately became adverse." (Doc. 22 at 16). But it does not explain why that is so.

"battery" under §II.E's "Wrongful Acts" exclusion. (Id. at 4). And in its brief in opposition to Plaintiff's motion for preliminary injunction, Defendant argued that it did not owe coverage in the Biddinger Action under the School Leaders Policy because "the deprivation of rights alleged is the result of an assault." (Doc. 14 at 29).

In the Mangan action, Plaintiff alleges that his daughter "was subjected to severe verbal abuse and humiliation" by the high school's softball coach during a game and "experienced ... a panic attack." (Id. ¶29). He further alleges that the coach instructed her to pitch batting practice from a close range behind an inadequate protective screen, and that during that practice she "was hit in the back of the head by a batted ball and knocked unconscious," sustaining injuries. (Id. ¶¶31–35). And Mangan alleges that his daughter's injuries were caused in part by the School District's "negligence, carelessness, and recklessness." (Id. ¶¶36–38).

Given that Defendant withdrew its defense in the Biddinger Action under the School Leaders Policy based on the Policy's exclusion of claims arising from assault or battery, and that the Policy also excludes from coverage suits arising out of bodily or mental injury, (See Doc. 10-1 at 6, §II.D), there appears to be a real probability, considering the factual allegations in the Mangan action, that Defendant would withdraw its defense

in that action under the Policy on a similar basis. And as the Mangan action is well underway, this possibility is of sufficient immediacy and reality to warrant judgment. The court therefore concludes that adversity of interests is present.

### ii. Conclusiveness

A declaratory judgment would decide whether Defendant must provide defense coverage in the Biddinger and Mangan actions. It would also decide whether Plaintiff has a right to defense coverage in those actions. So the parties' rights and obligations related to those actions under the two policies "will be definitively decided by" the judgment. *Step-Saver*, 912 F.3d at 649 n. 9. And the court agrees with Plaintiff that "the questions presented are predominantly ... legal" because they concern the terms of an insurance contract as applied to two complaints. (Doc. 22 at 12); *see NE Pub Partners*, 239 F.3d at 344. So the conclusiveness factor is present.

### iii. Practical Utility

Finally, a declaratory judgment action would "clarify [the] legal relationship" between Plaintiff and Defendant regarding the policies' application to the Biddinger and Mangan actions. *Step-Saver*, 912 F.3d at 656. It would thereby help the parties "make responsible decisions about the

future" as they navigate these actions. So the practical utility factor is present.

Because it finds that the three ripeness factors for a declaratory judgment action are present, the court concludes that Plaintiff's claims relating to the Mangan action are ripe. It will therefore not dismiss Counts III, IV, and VI for lack of subject-matter jurisdiction.

### b. Request for monetary relief in Counts III, IV, VI, and VII

Defendant additionally asserts that Plaintiff's request for monetary relief in Counts III, IV, VI, and VII is improper because Defendant continues to defend it in the Mangan action. (Doc. 15 at 15). It does not explain what procedural result it thinks this argument compels. Plaintiff's demand for certain relief is not a "claim" subject to 12(b)(6) dismissal. *See Childs v. Fitness Int'l LLC*, No. 2-22-cv-5196, 2023 WL 3594180, at *5 (E.D. Pa. May 22, 2023) ("Federal Rule 12(b)(6) applies to claims, not remedies."). Neither does Defendant argue that this request is "redundant, immaterial, impertinent, or scandalous," such that it should be stricken under Fed. R. Civ. P. 12(f). And the court concludes *supra* that Defendant's continued defense does not eliminate subject-matter jurisdiction with regard to the Mangan action. So the court takes no action with respect to this assertion.

### c. Request for declaratory relief in Count VII

Defendant next asserts that Plaintiff's request for a declaratory judgment enjoining Defendant from denying coverage is improper because further developments (such as additional claims or dismissals in the Mangan action) could alter its obligations. (Doc. 15 at 15–16). It argues that this request should therefore be stricken under Rule 12(f). (Id.). But it does not argue that this request is "redundant, immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f); it just argues that the requested declaration is too broad. That is not a basis for striking the request under Rule 12(f).

### d. Motion to dismiss Count V under Rule 12(b)(6) or for a more definite statement under 12(e)

Defendant contends that Count V, which is brought under Pennsylvania's Unfair Insurance Practices Act, should be dismissed for failure to state a claim upon which relief can be granted. (Doc. 15 at 16–18).

Plaintiff acknowledges Defendant's 12(b)(6) argument regarding Count V, (Doc. 22 at 19 ("Regent's only demurrer pursuant to Rule 12(b)(6) pertains to Count V … of the District's amended complaint (See Regents brief at pp. 16–17).")), but does not respond to it. (See generally Doc. 22). At any rate, as Defendant notes, (Doc. 15 at 18), the UIPA does not create

- 18 -

a private cause of action; it is instead enforced by the Pennsylvania Department of Insurance. 40 Pa. Stat. §§1171.1–1171.15; *Albert v. Erie Ins. Exch.*, 65 A.3d 923, 931 (Pa. Super. Ct. 2013). Count V will therefore be dismissed for failure to state a claim.

### e. Plaintiff's request for counsel fees under 42 Pa. Cons. Stat. §2503

Finally, Defendant argues that Plaintiff's request for attorney's fees under 42 Pa. Cons. Stat. §2503, (Doc. 6 ¶201), should be dismissed because "[t]he claim for attorney's fees ... does not create an independent cause of action under the Pennsylvania Judicial Code." (Doc. 15 at 18). While §2503 does not create an independent cause of action, Plaintiff does not assert it as an independent cause of action; it simply includes that request for relief among its allegations under Count VI, which alleges a violation of 42 Pa. Cons. Stat. §8371. (Doc. 6 ¶¶183–201). Because Plaintiff merely requests relief under §2503, and does not bring a *claim* under §2503, there is no basis for 12(b)(6) dismissal.

Defendant also cites *Carr v. Travelers Home & Marine Ins. Co.*, No. 23-1993, 2023 WL 7167570, at *4 (E.D. Pa. Oct. 31, 2023) for the proposition that "courts have consistently concluded that a plaintiff cannot bring a freestanding common law bad faith claim and a separate breach of contract

claim, as the former is subsumed within the latter." (Doc. 15 at 18). That conclusion stems from the principle that "[u]nder Pennsylvania law, bad faith by an insurance company can give rise to two separate causes of action: a breach of contract action for a violation of an insurance contract's implied duty of good faith, and a statutory action under the terms of Pennsylvania's bad faith statute, [42 Pa. Cons. Stat. §8371]." *Id.* (quoting *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 496–97 (3d Cir. 2015)). Because the common law duty of good faith is implied in every contract, a common law bad faith claim arising from an insurance contract can be brought as part of a breach of contract action, and thus cannot be brought *separately* from a breach of contract action. *Id.* (citing *Pommels v. State Farm Ins.*, No. 18-5143, 2019 WL 2339992, at *6 (E.D. Pa. June 3, 2019) (collecting cases)).

Plaintiff does not assert a separate common law bad faith claim; Count VI is statutory claim brought under 42 Pa. Cons. Stat. §8371. (Doc. 6 ¶¶183–201). So the principle discussed above does not provide a basis for 12(b)(6) dismissal here.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part. It will be granted with respect to Count V of Plaintiff's Amended Complaint, and otherwise denied. Count V will be dismissed. An appropriate order follows.


**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 7, 2024**
24-564-02